UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:13CR 72 SNLJ |
| | ) | |
| DARRYL HOUSE, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Defendant Darryl House through his attorney, filed his Motion to Dismiss Indictment (Document #109) and Defendant's Motion to Suppress Statements and Identification and Memorandum in Support (Document #110).

In his Motion to Dismiss Indictment, defendant asks that the court dismiss Count I of the indictment which alleges a violation of 18 U.S.C. § 1951.

The memorandum in support of the motion to dismiss contains a helpful history of the Hobbs Act, 18 U.S.C. § 1951. As the defendant's memorandum states, the Hobbs Act has withstood challenges on the grounds that it exceeded Congress's power under the Commerce Clause to create a Federal crime of police action over what was ordinarily a state offense. The Circuit Courts of Appeal have required only a <u>de minimis</u> connection with interstate commerce. (Memo, p. 1).

The memorandum continues that the "United States Supreme Court has made it clear that the broad language of the Hobbs Act is evidence of congressional intent to 'use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery, or physical violence.' <u>Stirone v. United States</u>, 31 U.S. 212, 215 (1960)." (Memo, p. 2).

The Commerce Clause and Congress's power to legislate under it was reviewed in <u>United States v. Lopez</u>, 514 U.S. 529 (1925), and <u>United States v. Morrison</u>, 529 U.S. 598 (2000), which led to new challenges, but all were rejected. In <u>Jones v. United States</u>, 529 U.S. 848 (2000), the Court held that the Commerce Clause did not provide jurisdiction for the Court to criminalize arson of a private owner-occupied residence. As defendant's memorandum points out, the common thread in the <u>Lopez</u>, <u>Morrison</u> and <u>Jones</u> decisions was the necessity for commercial activity in order for the Commerce Clause to provide jurisdiction over the acts of extortion, robbery or physical violence, which ordinarily would be local claims. <u>Id</u>.

The defendant, Darryl House, brings his claim that Count I of the Indictment should be dismissed because it violates the Tenth Amendment of the Constitution, which provides sovereignty over the police power to the individual states. The defendant argues that the Constitution does not grant Congress a general police power, which belongs to the states and the states alone. <u>Citing United States v. Comstock</u>, 130 S.Ct. 1949, 1967 (2010), Mr. House asserts that the Commerce Clause authority of Congress does not extend to the exercise of police powers in circumstances such as those alleged in the indictment in Mr. House's case, that is, the robbery of a jewelry store.

As the defendant points out in his memorandum, until recently an individual did not have standing to challenge a statute under the Tenth Amendment as the Circuit Courts of Appeal had ruled that only a state had such standing. In <u>Bond v. United States</u>, 131 S.Ct. 2355 (2011), the Supreme Court found that Bond, an individual, had a right to bring a challenge under the Tenth Amendment and the Court remanded the case for further consideration to the Third Circuit Court of Appeals, which maintained the conviction. An appeal followed and certiorari has been granted by the Supreme Court.

On the basis of the Bond decision, the defendant is asking the court to dismiss Count I of the indictment, claiming the Hobbs Act violates the Tenth Amendment. (Memo, p. 5).

The government, in its response (Document #114), argues that each circuit to consider the issue resolved it by holding that the passage of the Hobbs Act was not a violation of the Tenth Amendment or the Commerce Clause. United States v. Jarrett, 705 F.2d 198 (7th Cir. 1983) ("The Hobbs Act presents no unconstitutional intrusion upon the sovereignty of the states and, thus, is a constitutional exercise of the Congress's power." Id, at 203). In United States v. Farmer, 73 F.3d 836 (8th Cir. 1996), the Eighth Circuit ruled in the same manner ("Its [Hobbs Act] words in no way exclude prosecutions for single local robberies, so long as they satisfy the requirement that commerce or the movement of any article or commodity in commerce is obstructed, delayed, or affected, always understanding that by "commerce," in this context, is meant interstate commerce." Id., at 843.

In the Eighth Circuit case of United States v. Vong, 171 F.3d 648 (8th Cir. 1999), a case factually close to the factual situation in the instant case involving Mr. House, Vong was convicted under the Hobbs Act for robbery of a jewelry store in Minnesota. In Vong, a co-defendant of Mr. Vong argued that jewelry stores robbed in the conspiracy did not have a sufficient impact on interstate commerce to fall under the statute. The indictment stated in Vong that the jewelry stores robbed bought and resold jewelry that was manufactured, in part, outside the state of Minnesota and it was shipped to the stores using interstate transportation channels. The Court in Vong cited its Farmer case, 73 F.3d 836 at 843 (8th Cir. 1996), "We have no doubt of the power of Congress to protect from violence businesses that are part of an interstate chain." Vong distinguished its fact situation from that in United States v. Lopez, 514 U.S. 549, 115 S.Ct. 624 (1995), because in the Vong case as in Mr. House's case the statute, the Hobbs Act, expressly contains the jurisdictional

nexus that the conduct "affect commerce." Vong, at 654. The Lopez case involved possession of a firearm in a school zone in violation of Title 18, U.S.C. § 922(q). That statute did not require that interstate commerce be affected for the conduct to be a federal crime.

The statute was missing the "federal nexus." The Hobbs Act on the other hand, states, in part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do ... shall be fined under this title or imprisoned nor more than twenty years, or both.

Title 18, U.S.C., § 1951(a).

The indictment in this case in Count I begins with:

> At all times material to this Indictment, Jayson Jewelers [the victim], was engaged in the business of purchasing and selling commodities in interstate commerce and an industry which affects interstate commerce.

In paragraph 2 of Count I of the indictment, after naming the four defendants, the indictment continues:

> aided and abetted by each other, did unlawfully obstruct, delay and affect, and attempt to obstruct, delay and affect, commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951, ....

There is no doubt that the indictment includes the nexus of interstate commerce.

As the government points out, the Eighth Circuit Model Jury Instruction for 18 U.S.C. § 1951 reflects the requirement that the government must prove an effect on interstate commerce in order to obtain a conviction under that statute. The third element in the instruction states:

> Three, the defendant's action [obstructed] [delayed] [affected] [interstate]

[foreign] commerce in some way or degree.

Model Criminal Instructions, 8th Cir., 6.18.1951.

An explanation of what obstruction of interstate commerce is, is given by example in the proposed instruction 6.18.1951:

> You may find an [obstruction][delay][effect] on [interstate][foreign] commerce has been proven if you find and believe from the evidence beyond a reasonable doubt: (describe effects on [interstate][foreign] commerce alleged in the Indictment on which proof was offered at trial, which demonstrates an actual effect on interstate commerce, e.g., that the John Doe Produce Distributing Co. shipped lettuce, tomatoes, string beans, and other produce from St. Louis, in the State of Missouri, to various points outside of the State of Missouri, including the states of Oregon, Wyoming and Kansas.)

In order for the jury to find the element necessary to convict the defendant of a Section 1951 violation, the jury must consider and find that the government has proven beyond a reasonable doubt that the criminal act obstructed, delayed or affected interstate commerce. The government states that it would prove that the inventory of Jayson Jewelers, the store that was robbed, was manufactured in states other than Missouri along with foreign countries, and that the inventory in the jewelry store which was taken in the robbery depends on interstate commerce providing the nexus to interstate commerce. See also, United States v. Foster, 443 F.3d 978 (8th Cir. 2006); United States v. Mosley, 141 F.3d 1171 (8th Cir. 1998). See also, United States v. Milton, 153 F.3d 724 (4th Cir. 1998); United States v. Farrish, 122 F.3d 146 (2nd Cir. 1997); and Vong, 171 F.3d 648 (8th Cir. 1999).

## **Conclusion**

The cases indicate that the Hatch Act, Title 18 U.S.C., does not offend either the Tenth Amendment or the Commerce Clause.

## **Section 1951 Overbroad?**

The defendant in his memorandum (Document #110) makes the statement that the statute, 18 U.S.C. § 1951, is overbroad and, thus, violates the constitutional proscription against vagueness. If persons of reasonable intelligence can derive a core meaning from a statute, then the enactment may not only be applied to conduct within that meaning but the possibility of a valid application necessarily precludes facial invalidity. Brache v. County of Westchester, 658 F.2d 47, 51 (2d Cir. 1981), cert. denied. The Fifth Circuit found in United States v. Williams, 621 F.2d 123, 125 (5th Cir. 1980) ("We hold that the terms of this statute to be sufficiently precise to 'to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'")

The statute as applied to Defendant House in this case is not unconstitutionally overbroad.

## **Defendant's Motion to Suppress Statements and Identification**

Defendant has filed Defendant's Motion to Suppress Statements and Identification (Document #111) through his attorney asking that any oral or written statements or other writings made by Kevin Stitt including, but not limited to, such conversations in which Stitt participated as may have been overheard by agents of the government; any interviews of Stitt by and with any federal, state or local law enforcement agents; and any statements made before any state or federal grand jury. Additionally, defendant moves to suppress any lineup identification to be used against Darryl House in any trial or other proceeding in this matter.

As part of his recitation of facts, defendant states that on May 23, 2012, Sergeant Don Perry of the Cape Girardeau Police Department visited Kevin Stitt in the Tennessee Department of Corrections in Nashville, Tennessee, in regards to a robbery of Jayson Jewelers, a jewelry store in Cape Girardeau. Sergeant Perry interviewed Mr. Stitt, and Mr. Stitt requested an attorney. Despite

the request, Sergeant Perry continued inquiring of Mr. Stitt for nearly one hour. Eventually, Mr. Stitt consented and agreed to give Sergeant Perry a written and verbal statement.

In his motion, Defendant House argues that any oral or written statements as may have been made by Kevin Stitt were involuntary, were elicited by coercion, and/or were elicited without Mr. Stitt being fully advised of and afforded his rights under the Fifth Amendment of the United States Constitution, and said statements are, therefore, involuntary and inadmissible not only against Mr. Stitt but as against Defendant House.

The defendant continues that any testimony or other evidence relating to or based upon said statements was obtained as a direct result of the violation of Defendant House's rights under the Fifth Amendment and is, therefore, inadmissible.

In addition, Defendant House seeks to suppress a photo lineup shown to Mr. Stitt in which he identified defendant from a photo array of six individuals.

The government, in its response, announced to the court it will not offer against House, in its case-in-chief, any evidence of the content of the interview by Cape Girardeau Police Detective Don Perry conducted on May 23, 2012. The government states that it believes that such evidence would be inadmissible hearsay, if offered during its case-in-chief at House's trial. The government states it reserves the right to use the statement as a prior consistent statement pursuant to Federal Rule of Evidence 801(d)(1)(B) at the trial to rebut any accusation that Kevin Stitt recently fabricated his trial testimony. The government states that it intends to call Kevin Stitt in its case-in-chief as a witness in the trial for him to testify as to the events occurring during the Jayson Jewelers robbery. That testimony, according to the government, will be based on Stitt's recollection of the events and will not rely on the May 23, 2012, statement.

The government also announces in its response that it will not introduce evidence at House's trial of the photo lineup identification conducted on June 8, 2012, in which Kevin Stitt identified House as the participant of the robbery from a group of photos. The government will ask Stitt to identify House at trial, but that identification will be based on Stitt's memory and will not rely on the June 8, 2012, photo lineup.

In view of the government's announcements, the court finds that the Defendant's Motion to Suppress Statements and Identification should be denied as moot. The government has stated that it will not use Kevin Stitt's statement against House in the government's case-in-chief against House but will use the statement pursuant to Federal Rule of Evidence 801(d)(1)(B). That rule of evidence states that among statements that are not hearsay is a statement which is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying.

In accordance with the government's agreement,

**IT IS HEREBY ORDERED** that the government not introduce into evidence in its case-in-chief against Darryl House the statement taken from Kevin Stitt on May 23, 2012, nor the identification of House by Kevin Stitt by the photo lineup conducted on June 8, 2012.

As a result, Defendant's Motion to Suppress Statements and Identification should be denied as moot.

As an additional reason to deny the defendant's motion to suppress statements is that Darryl House lacks standing to seek the suppression of Kevin Stitt's statements as further discussed in the consideration of the pro se motions of Defendant Darryl House. Defendant, pro se, expands on the allegation contained in his attorney's claim as contained in paragraph 4 of Document #111):

      4. Any testimony or other evidence relating to or based upon said statements were obtained as a direct result of the violation Defendant's rights under the Fifth Amendment, as noted above, and are therefore inadmissible.

Defendant is claiming that the statement taken from Kevin Stitt by Detective Don Perry not only violated Stitt's constitutional rights but those of Defendant Darryl House.

### Pro Se Pleadings of Defendant Darryl House

Defendant Darryl House, pro se, has filed two pleadings: (1.) Motion to Suppress Evidence and Memorandum in Support (Document #124); and (2.) Attachment of Facts (Document #126).

In his pro se motion to suppress evidence, Defendant Darryl House asks that the court issue an order completely excluding all evidence and statements from Kevin Stitt, Charla Dinkins, Keyessence Johnson and Debbie Drerup[1] because they are all the direct result of the constitutionally offensive coerced confession extracted from Kevin Stitt and as such, Stitt's coerced confession and its "fruit" are barred from being admitted against Defendant House at his trial.

Defendant, pro se, continues in his motion that as a direct result of the coerced statements of Kevin Stitt, the prosecution has been allowed to introduce and bolster unreliable evidence and statements that stem directly from Stitt's false and coerced confession. As a result, Darryl House's Fourteenth Amendment rights to due process and a fundamentally fair trial have been violated.

The defendant alleges that the interrogation of Stitt led to the confession of Kevin Stitt "where I was allegedly implicated as having participated in the robbery." (Document #124, p. 2). Defendant

---

[1]Kevin Stitt, Charla Dinkins and Keyessence Johnson are co-defendants with Darryl House in Cause No. 13CR 72 SNLJ, charging the robbery of the Jayson Jewelry store. Debbie Drerup is a victim of the robbery in that she was the jewelry store employee who actually had a firearm pointed at her during the commission of the robbery.

House asks the court to grant the complete suppression of the evidence the prosecution intends to introduce against House at his trial and bar the witnesses mentioned above from testifying at House's trial because the evidence and contents of their testimony are the direct product of police misconduct which led to the testimony and other evidence the government intends to introduce.

It is the defendant's position that the testimony of the witnesses cited and other evidence which the government will present at trial is "fruit of the poisonous tree." The defendant cites the Supreme Court decision <u>Wong Sun v. United States</u>, 371 U.S. 471, 83 S.Ct. 407 (1963). That case considers the use of illegally obtained evidence and admissibility of further evidence which the illegally obtained evidence leads to. The Supreme Court stated:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959).

371 U.S. at 487-488.

It is important to place the quoted portion from <u>Wong Sun</u> into context. In the paragraph from which it is taken, the Court is describing how evidence derived from improper or illegal violation of the defendant's rights may be used. The paragraph describes two exceptions to the exclusion of derivative evidence. If the government learned of the evidence from an independent source or the discovery of the challenged evidence had become so attenuated that the taint was dissipated, it should not be excluded. However, if the derivative evidence is the result of the illegal acquisition of evidence, then it should not be admissible. The beginning of the paragraph cited and the end of the paragraph make clear that what the Court is talking about is the admissibility of derivative evidence

against the declarant, the speaker or actor himself. The paragraph begins, "We now consider whether the exclusion of Toy's declarations requires also the exclusion of the narcotics taken from Yee, to which those declarations led the police. The prosecutor candidly told the trial court that 'we wouldn't have found those drugs except that Mr. Toy helped us to.'"

The Supreme Court found that Toy was arrested without either reasonable grounds or probable cause. 371 U.S. at 479. The police entered Toy's residence without a warrant or probable cause. During that illegal entry, Toy made certain statements. The Court stated "It is conceded that Toy's declarations in his bedroom are to be excluded if they are held to be 'fruits' of the agents' unlawful action." Id. at 484.

Returning to the paragraph from Wong Sun quoted by Defendant House in his pro se motion in which the Court used a quotation from Maguire, Evidence of Guilt, and set out above, the Court considered whether the exclusion of Toy's statements or "declarations" required also the exclusion of narcotics to which those statements led the police. The narcotics are the derived evidence. The Supreme Court concluded, "We think it clear that the narcotics were 'come at by the exploitation of that illegality' and hence that they may not be used against Toy."

It was Toy's rights that were violated when officers entered his residence without a warrant or probable cause, and it was Toy's statements that led to the recovery of narcotics, and the Court is declaring that that derivative evidence, narcotics, cannot be used against Toy. The Court is saying that Toy's rights were violated so the evidence may not be used against Toy.

Defendant House seeks to use Wong Sun's wording as declaring that the statements of Kevin Stitt about the jewelry robbery led to his, House's, arrest and that, therefore, House's arrest was illegal. (Of course, House has not shown that Stitt's statement actually led to House's arrest.) House

goes further to say that any evidence of House's involvement in the jewelry robbery must be declared tainted because Stitt talked about the robbery and as a result any evidence about the robbery cannot be used against House.  That is not the law.

Besides the case of Wong Sun, the defendant points to the cases of United States v. Lin Lyn Trading, Ltd. and Raymond Lynn Thomas, 149 F.3d 1112 (10th Cir. 1998); and Hamilton v. Nix, 809 F.2d 463 (8th Cir. 1987).

In the Lin Lyn Trading case, a U. S. Customs Agent named Seagraves inspected documents Raymond Lynn Thomas was carrying as he was returning to the United States on March 29, 1991. Earlier, in 1990, there had been a Customs investigation of Lin Lyn Trading, Ltd., an import company owned by Raymond Lynn Thomas and his wife.  Thomas served as Lin Lyn's vice president and director of operations.  In January, 1991, Customs agents discovered undeclared lace merchandise in a shipment to Lin Lyn.  Officers obtained a warrant to search Lin Lyn's business premises.  The warrant was executed on February 22, 1991, and a large number of documents was seized.  Thomas was advised that he and Lin Lyn were under investigation for violating 18 U.S.C. § 542 (unlawful entry of goods into the United States) and 18 U.S.C. § 545 (smuggling goods into the United States).

As noted above, on March 29, 1991, Thomas returned to the United States from Asia and was detained by Customs inspectors at the Portland International Airport.  Agent Seagraves inspected documents Thomas was carrying.  The documents included a yellow notepad.  Thomas informed Seagraves that the notepad documented Thomas's conversations with his legal counsel.  Seagraves copied documents pertinent to the investigation and returned the originals of most of the documents to Thomas, but the notepad was not returned.  Defendants' counsel asked for the return of the notepad.  The Assistant United States Attorney ordered that the materials received from Seagraves

be sealed. The defendants filed a Rule 41(e) motion pursuant to Federal Rule of Criminal Procedure 41 for the return of the property seized. After a hearing in February, 1994, a magistrate judge recommended that the Rule 41(e) motion be granted in regards to the notepad because its seizure was unlawful and the government's continued possession of privileged attorney-client communications would cause the defendants irreparable injury. Thomas and Lin Lyn were indicted for conspiracy to defraud the United States by smuggling drugs into the United States and the unlawful entry of goods into the United States. In January, 1996, Thomas and Lin Lyn filed a motion to suppress all evidence seized on March 29, 1991, on the theory that the illegally seized notepad became a "roadmap" for the case investigation. The District Court found that Seagraves intentionally seized the notepad with knowledge that it contained privileged information. The District Court found that Customs agents had access to the notepad and used it to conduct their investigation of Thomas and Lin Lyn and that the entire investigation was tainted by the illegal seizure. The District Court suppressed all evidence discovered after March 29, 1991.

It is important that the defendants whose rights were violated were the complaining parties. Although one of the parties, Lin Lyn, was a corporation, the Court stated, "We assume that Thomas was present at the attorney-client conference in both his individual capacity and his capacity as an officer and representative of Lin Lyn, and that he was searched in both capacities. Otherwise, Lin Lyn would not have had standing to claim the attorney-client privileged or object to the seizure of materials from Thomas." 149 F.3d at 1115, n. 3.

Further, footnote 3 stated, "See Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961 (1969) ('Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.')."

As the Court notes in footnote 3, Fourth Amendment rights are personal rights and like some other constitutional rights, may not be vicariously asserted by someone else. Both Lin Lyn and Thomas were the defendants and their rights were violated and they were the ones who were permitted to complain.

In Hamilton v. Nix, 809 F.2d 463 (8th Cir. 1987), it was the defendant's own rights that were violated, not someone else's.

In United States v. Bruton, 416 F.2d 310 (8th Cir. 1969), George William Bruton was convicted of Robbery of a United States Post Office Department in St. Louis. Approximately one year after the robbery, one William J. Evans confessed to the crime and implicated Bruton. An Appeals Court found that Evans's incriminating statements were tainted and affected by the poison of prior concededly unconstitutional statements obtained by police officers. At Bruton's trial, Evans testified against Bruton. Over the objection of defense counsel, Evans testified fully as to his and Bruton's participation in the robbery of the contract station. The Court of Appeals stated:

> This appeal raises but a single issue: whether Evans' testimony against Bruton was unconstitutionally tainted by the illegality of Evans' earlier confessions. Appellant argues that the government used the unconstitutional confession to connect Evans and Bruton in the robbery, and absent the confession would not have called Evans as a witness against appellant. Therefore, according to appellant, Evans' testimony was the poisoned result of his earlier illegally obtained confession and should have been excluded.

416 F.2d at 311. This is what Defendant House is arguing: that because Stitt's statement was improperly obtained, none of the defendant's co-defendants should be permitted to testify against him, including Stitt. The Eighth Circuit continued in the Bruton case:

> The threshold question is whether appellant has standing to challenge Evans' testimony. This is implicit from appellant's brief in which his able counsel states, "the appellant is acutely aware of the fact that his standing to object to this (Evans')

testimony presents a difficult problem." We hold that appellant lacks standing, and affirm.

416 F.2d at 312. The Bruton Court referred to Alderman v. United States, supra, in which the government had employed electronic surveillance in violation of the Fourth Amendment to secure incriminating evidence against several defendants. One of the defendants, who neither owned nor was present on the premises subject to the surveillance, nor was a party to any of the monitored conversations, sought to have the evidence suppressed. In holding that that co-defendant had no standing to object, the Court reaffirmed what the Bruton Court characterized as "the long established principle" that:

> Suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence.[2] 394 U.S. at 171-172, 89 S.Ct. at 965.

The Bruton decision pointed out that while it is true that Alderman and the cited cases all involve infringement of the Fourth Amendment and Evans's statement had been taken in violation of Evans's Fifth Amendment rights, the Bruton Court stated that it did not deem that distinction material. It pointed to the statement in Alderman, that the standing requirement is at least in part an outgrowth of the personal nature of certain constitutional rights. 394 U.S. at 174, 89 S.Ct. 961. 416 F.2d at 312. The Bruton Court continued, "It has long been held that the Fifth Amendment right to

---

[2] The Bruton case cited other similar cases in which only those whose rights were violated by the search itself had the right to complain, not those who were aggrieved solely by the introduction of damaging evidence. The Court stated: "See also, Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.d.2d 697 (1960); Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942); Standard Oil Co. v. Iowa, 408 F.2d 1171 (8th Cir. 1969). The Alderman Court observed that Fourth Amendment rights are personal rights and may not be vicariously asserted."

be free from self-incrimination is a personal right of the witness." Bruton cited Roger v. United States, 340 U.S. 367, 71 S.Ct. 438 (1951); Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370 (1906); McAlister v. Henkel, 201 U.S. 90, 26 S.Ct. 385 (1906).

In response to Bruton's claim that because the statement was taken improperly from Evans, Evans should not be permitted to testify against Bruton (analogous to House's claim that the improper statement taken from Kevin Stitt should protect House from any introduction of any evidence obtained during the further investigation including Stitt's live testimony against House at House's trial). The Supreme Court, in Alderman, refused to extend the right of objection and the right to suppression to anyone other than the individual whose personal rights had been violated:

> The deterrent values of preventing the incrimination of those whose rights the police have violated have been considered sufficient to justify the suppression of probative evidence even though the case against the defendant is weakened or destroyed. * * * But we are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth. 394 U.S. at 174-175, 89 S.Ct. at 967.

Bruton, 416 F.2d at 313.

In the recent case of United States v. Douglas, 2010 WL 2470885 (E.D.Mo.), the defendant attempted to object to statements made by his wife, that she was not warned of her Miranda rights. The magistrate judge held:

> With respect to statements generally made by Ms. Douglas, Defendant "has no standing to complain of the fact that his wife was not advised of her own constitutional rights." United States v. Cluck, 542 F.2d 728, 736 (8th Cir. 1976); accord United States v. Bruton, 417 F.2d 310, 312 (8th Cir. 1969) (statements of others cannot be challenged under the Fourth Amendment by defendant). Miranda rights are personal to the person making the statement, and defendant has no standing to assert such a violation as to Ms. Douglas's statements. See United State v. Escobar, 50 F.3d 1414, 1422 (8th Cir. 1995).

This court finds that House has no standing to object to violation of Stitt's rights pursuant to <u>Miranda</u>.

Defendant House's pro se motion to suppress evidence (Documents #124 and #126) should be denied.

**IT IS HEREBY RECOMMENDED** that the defendant's Motion to Dismiss Indictment (Document #109) be denied.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Suppress Evidence and Identification (Document #111) be denied.

**IT IS FURTHER RECOMMENDED** that Defendant Darryl House's Pro Se Motion to Suppress Evidence (Documents #124 and #126) be denied.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).

_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of February, 2014.